**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **AMANDA JUNE JOHNSON,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **1:25-CV-231-ML** |
| **FRANK BISIGNANO,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## ORDER

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Acting Commissioner of the Social Security Administration, in their official capacity ("the Commissioner"), denying disability benefits to Plaintiff.[1] Before the court are Plaintiff's Opening Brief (Dkt. 9), Defendant's Brief in Support of the Commissioner's Decision (Dkt. 11), Plaintiff's Reply Brief (Dkt. 12) and the Record of the Social Security administrative hearing in this matter (Dkt. 8), cited as TR __. Having considered the briefing, the record below, and the case file as a whole, the Magistrate Judge now enters the following Opinion and Order.

### I.     PROCEDURAL HISTORY

Amanda June Johnson ("Johnson") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on April 3, 2021, alleging disability as of February 2, 2016. TR at 280-287. The claim was initially denied on July 16, 2021. TR at 124-128. The claim was denied at the reconsideration level on June 9, 2022. TR at 150-154. Johnson appealed this denial by filing a timely Request for ALJ Hearing on June 22, 2022. TR at 155-156. A hearing was held on January 1, 2023, by video teleconference, with Administrative Law Judge Peri

---

[1] Both parties have waived the right to proceed before a District Judge and have consented, pursuant to 28 U.S.C. § 636(c), to have all proceedings in the case, including the entry of final judgment, conducted by the Magistrate Judge. Dkts. 14, 15.

Collins. TR at 43-76. However, a new ALJ was assigned to her claim after the first hearing. TR at 82-83. A supplemental hearing was held on July 11, 2024, by video teleconference, with Administrative Law Judge Theodore Kim ("ALJ"). TR at 43-76.

The ALJ issued an unfavorable decision on August 6, 2024. TR at 17-38. Johnson appealed. The Appeals Council denied her request for review of the ALJ's decision on December 18, 2024, thereby making the ALJ's decision the Commissioner's final administrative decision. TR 7-12. Johnson filed this action seeking judicial review of the ALJ's decision. Dkt. 1.

## II.    APPLICABLE LAW

### A.    Standard of Review

Judicial review of the ALJ's decision is limited. Specifically, the district court reviews: (1) whether the decision was supported by substantial evidence; and (2) if so, whether the Commissioner applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Copeland*, 771 F.3d at 923; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). As a result, the court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.

1988). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### B.    Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reasons of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and (5) whether the impairment or combination of impairments prevents the claimant from doing any other work.  20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett*, 67 F.3d at 565. Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may

meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Id.*

## III.    THE ALJ'S DECISION

The ALJ determined as a threshold matter that Johnson met the insured status requirements of the Social Security Act through March 31, 2020. TR 22. The ALJ then engaged in the standard five-step sequential process, finding at step one that Johnson had not engaged in substantial gainful activity during the period from her alleged onset date of February 2, 2016 through her date last insured of March 31, 2020. TR 22.

At step two, the ALJ found Johnson has the following severe impairments: migraine; osteoarthritis of multiple joints; lumbar spine spondylosis; fifth digit, right hand distal phalanx fracture; coronary artery disease; STEMI; type 2 diabetes mellitus with neuropathy; angina pectoris; and premature ventricular contraction (PVC). TR 22-23.

At step three, the ALJ determined Johnson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). TR 23-25.

Before reaching step four, the ALJ determined that Johnson retains the residual functional capacity ("RFC")[2] to perform:

---

[2] RFC is defined as the most an individual can still do despite their limitations. 20 C.F.R. § 404.1545. The responsibility to determine a claimant's RFC belongs to the ALJ. *Id.* § 404.1546; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite their physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of the claimant's impairments, even those that are nonsevere, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. The relative weight to be given to the evidence, however, is within the ALJ's

sedentary work, as defined in 20 CFR 404.1567(a), except that she can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. She can occasionally push or pull or operate foot controls with both lower extremities. She can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the Selected Characteristics of Occupations of the DOT, and can occasionally climb stairs and ramps. She can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. She can have occasional concentrated exposure to atmospheric conditions, as defined in the Selected Characteristics of Occupations of the DOT. She can tolerate occasional exposure to vibration. She can never be exposed to strobe lights, flashing lights or to bright lights, such as those found on a theatre stage. She requires a moderate noise work environment, as defined in the DOT and SCO. In addition, she can understand, carry-out, and remember simple instructions, and use judgment to make simple work-related decisions.

TR 25-29. Specifically, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. TR 26. In making this RFC assessment, the ALJ determined that Johnson's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. TR 27.

Continuing on to step four of the sequential evaluation process, the ALJ found Johnson had no past relevant work. TR 29. Johnson was 42 years old, which is defined as a younger individual aged 18-44, on the date last insured. TR 29. The ALJ further found Johnson has limited education and transferability of job skills is not an issue because she has no past relevant work. TR 29.

The ALJ found that, through the date last insured, considering Johnson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed. TR 29-30. Accordingly, the

---

discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)).

ALJ found Johnson was not under a disability at any time from February 2, 2016, the alleged

onset date, through March 31, 2020, the date last insured. TR 30.

Johnson now appeals from the ALJ's determination that she is not disabled.

**IV.    ANALYSIS**

**A.    Issues Presented**

Johnson presents one issue:

> The administrative law judge ("ALJ") must support any decision with
> substantial evidence and may not rely on his own lay interpretation of the record
> when assessing the residual functional capacity ("RFC"). Here, the ALJ
> determined Johnson could sustain a modified range of sedentary work, without
> proper medical evidence in the record that supported the limitations assessed and
> no greater limitations. Is the RFC supported by substantial evidence?

**B.    Discussion**

Johnson argues the ALJ's RFC cannot be supported by substantial evidence because there

is no medical opinion as to her RFC in the record. Johnson further argues the ALJ is responsible

for ensuring the record is complete.

The Commissioner concedes that Johnson "is right the specific limitations in the RFC

aren't directly supported by a medical opinion," but argues Johnson failed to cooperate in the

development of her claim. Dkt. 11 at 2. The Commissioner further contends the State agency

consultants did not find the record needed further development; instead they found the "evidence

in [the] file is insufficient to *establish severity* of [any] impairments" *Id*. (emphasis added)

(citing TR 113-14). The Commissioner argues the ALJ went beyond the State agency

consultants' opinions, seeing the evidence in the light most favorable to Johnson, which is not a

reason to remand the case. *Id*.

Before reaching the merits of the parties' arguments, it is important to reiterate the

relevant time frame. Johnson's alleged onset date was February 2, 2016, and her date last insured

was March 31, 2020. Thus, any disability must be supported by medical records during those dates. Johnson is not eligible for disability benefits for any disability occurring after March 31, 2020. 20 C.F.R. § 404.131(a).

During the relevant time period, Johnson's medical records consist of ER visits for isolated issues, a consult at a cancer center, and hospitalization and follow-up care for a heart attack. Although Johnson alleged a disability beginning February 2, 2016, there are no medical records before September 2017. TR 27.

In September 2017, Johnson presented to an ER with back pain *one day after going bowling*. TR 27 (emphasis added) (citing TR 466). She denied headaches, numbness, tingling, or weakness, and her sensation was intact as to light touch. She had some paraspinal tenderness in the lumbar region but full strength in all 4 extremities. X-rays showed mild multilevel lumbar spondylosis.

In August 2018, Johnson presented to an ER complaining of chronic left hip pain. She stated that the pain was worse over the last 2 months after she twisted her hip. TR 27 (citing TR 546). She also stated that she was able to walk but with a slow gait. On exam, she had tenderness to palpation of the left hip area around the greater trochanter. The provider recommended physical therapy and gave a differential diagnosis of osteoarthritis.

In March 2019, Johnson presented to an ER with a sore throat. TR 27 (citing TR 606). She reported that she could perform her activities of daily living. TR 606. On exam, she had normal range of motion of her back, and she moved all extremities equally.

In April 2019, Johnson presented to an ER with a migraine. TR 27 (citing TR 165). She admitted to sensitivity to light but denied weakness, numbness, or tingling. On exam, she moved all extremities equally. Her sensory function was intact.

In June 2019, Johnson presented to an ER with fifth digit right hand trauma. TR 27 (citing TR 655). On exam, she had some swelling at the dorsum of the finger. X-rays showed a distal fracture. The provider advised her to wear a splint for only about a week and to take Tylenol for pain

In November 2019, Johnson presented to a cancer clinic. TR 27 (citing TR 447). The provider noted that she suffered from migraines and post-traumatic osteoarthritis of multiple joints. On exam, however, she had normal strength and sensation.

From November 12 to November 14, 2019, Johnson was hospitalized after she presented to an ER with chest pain. TR 27 (citing TR 672-689). Her discharge diagnoses included coronary artery disease, STEMI, and type 2 diabetes mellitus with neuropathy, poorly controlled with an A1c of 11. On exam at discharge, her heart had regular rhythm and rate, and her gait was stable. A provider also gave a secondary diagnosis of premature ventricular contraction (PVC).

In December 2019, Johnson presented to a cardiologist to establish care after her hospital admission. TR 27 (citing TR 822). She stated that her chest pain symptoms had resolved and that her current concerns were left groin pain and paresthesia, difficulty sleeping, and returning to full activity. Her physical exam was mostly normal except for a small palpable knot in the region of the femoral artery. The provider advised her to continue her medications and follow up in 3 months. TR 27.

Johnson returned in early March 2020 for a follow up. TR 28 (citing TR 829). She reported that she generally was doing well, and that she had been active. TR 829. She endorsed occasional fatigue and chest pain, but she said that her pain responded to medication. Her physical exam was grossly normal. The provider advised her to continue her medications and follow up in 6 months. This was her last doctor visit before the date she was last insured.

At Johnson's follow-up visit in August 2020, *after the date last insured*, she stated that she would have intermittent episodes of angina, and that she would either lie down to rest or take medication, and that the pain would subside. TR 28 (citing TR 870). She reported that she would do this regularly, and that the frequency had not changed in the past 6 months.

The ALJ then compared Johnson's claims of disability and her testimony to her relevant medical records:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent. She alleged disability as of February 2, 2016; however, there are no medical records prior to September 2017. She alleged significant exertional limitations due to her back and hip; however, September 2017 lumbar spine x-rays showed only mild spondylosis. On exam, she had 5/5 strength in all 4 extremities (2F/9). During a visit to the emergency room in August 2018, she had a slow gait (2F/87), but the provider recommended only physical therapy (2F/89), and there is no evidence of any follow up. She also testified that she had constant tingling in her fingers; however, there is no evidence of numbness or tingling prior to the date last insured. In April 2019, she denied weakness, numbness, or tingling (2F/165). On exam, her sensory function was intact (2F/167). Further, in March 2019, she reported that she could perform her activities of daily living (2F/147). On exam, she had normal range of motion of her back. She moved all extremities equally (2F/149). During an exam in November 2019, she also had normal strength and sensation (1F/9). While she suffered a heart attack in November 2019 (2F/213), at discharge, her heart had regular rhythm and rate, and her gait was stable (2F/214). She had only two follow-up visits with a cardiologist prior to her date last insured. In December 2019, only a month after her heart attack, she stated that her chest pain symptoms had resolved (4F/3). The provider only recommended that she follow up in 3 months (4F/6). At the 3-month follow-up visit, she reported that she generally was doing well, and that she had been active. She endorsed occasional fatigue and chest pain, but she said that her pain responded to medication (4F/10). Her physical exam was grossly normal. The provider only advised her to continue her medications and follow up in 6 months (4F/12). She alleged that she used a cane and a walker, but there is no evidence in the record that she used these.

TR 28.

The ALJ then noted that the State agency medical consultants had found Johnson's osteoarthritis and diabetes severe, "but that there was insufficient evidence." TR 28. The State agency medical consultants actually found the "evidence in [the] file is insufficient to establish

severity of [any] impairments." TR 113. The ALJ also noted the State agency psychological consultants found Johnson had no mental medically determinable impairment before her last insured date. TR 29.

Johnson argues the ALJ erred because the ALJ did not rely on a medical opinion in crafting the RFC. Johnson argues this case is similar to *Griffin v. O'Malley*, 2025 WL 440284 (W.D. Tex. Jan. 17, 2025), *report and recommendation adopted sub nom. Griffin v. Colvin*, 2025 WL 440281 (W.D. Tex. Feb. 7, 2025), where the court remanded the Commissioner's decision because the ALJ had not relied on a medical source opinion. However, this case is very different from *Griffin* and *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir.1995), on which *Griffin* relies, because here the ALJ did not reject medical opinions that favored the claimant. Here, the State agency consultants found Johnson did not require an RFC. Additionally, unlike *Griffin* and *Ripley*, there was no medical evidence during the relevant time frame that the ALJ disregarded.

"To establish a period of disability, [the Claimant] *must have disability insured status* in the quarter in which [they] become disabled or in a later quarter in which [they] are disabled." 20 C.F.R. § 404.131(a) (emphasis added). There is no medical evidence showing Johnson had any RFC limitations during this period. The State agency consultants' opinions were that no limitations were required based on the relevant evidence.

To get around this rule, Johnson attempts to link her current alleged disability back to her date last insured. But the record does not support that she was disabled before her date last insured. In her briefing, Johnson cites primarily to medical records that occur *after* her date last insured. *See* Dkt. 9 at 12.  Indeed, at her first ER visit after the alleged onset of her disability, Johnson reported that she had been bowling the day before, an activity she claims she can no longer do due to her disability. *Compare* TR 466, *with* 56-57 (testimony). In March 2019, she

reported she could perform her activities of daily living, which she claims she can no longer do due to her disability. *Compare* TR 606, *with* 56-57 (testimony). Moreover, at her last appointment before her last date insured, she reported that she generally was doing well and that she had been active. TR 829.

Johnson does not even argue the ALJ's RFC was wrong or not sufficiently limited. In fact, she urges the court not to look at this case in its entirety. Dkt. 12 at 4 ("The overall merits of this case are not before the Court, including Defendant's assertions that Claimant failed to meet her burden to prove her disability."). Instead, Johnson argues the case must be remanded because there was no medical opinion that supported the RFC. In fact, the State agency consultants' opinions supported no limitations; and there were no opinions that supported more restrictive limitations. "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Madkins v. Bisignano*, 150 F.4th 657, 663 (5th Cir. 2025). Johnson cannot show such prejudice. If the ALJ erred, the ALJ erred in her favor by being too generous.

As previously stated, the court's role here is to determine whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the proper legal standard. *Copeland*, 771 F.3d at 923. It is the court's responsibility to ensure the ALJ's decision is supported by more than a scintilla of evidence and that the ALJ properly applied the relevant standards. The court cannot find the ALJ erred against Johnson in this case without substituting his judgment for that of the ALJ, which he will not do.

## V.    CONCLUSION

Johnson plainly did not carry her burden of proof at steps 1 through 4 of the sequential analysis.  *See Leggett*, 67 F.3d at 565 (claimant has burden of proof on first four steps). Having

failed to do that and having failed to fully cooperate with the Commissioner in developing the record, Johnson now seeks salvation through an alleged technical error in her favor. It is the court's duty to determine whether the Commissioner's decision is supported by substantial evidence and was reached through proper legal standards. *See Copeland*, 771 F.3d at 923. Based on the foregoing analysis, the undersigned **AFFIRMS** the Commissioner's decision in all aspects.

SIGNED October 9, 2025.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE